1
2
3
4
5
6
7
8

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

9  LAMONT SHEPARD,

10              Plaintiff,

11      v.

12  BASS, et al.,

13              Defendants.

14

15 _____/

16

17 **I.   Background**

18      Plaintiff Lamont Shepard ("Plaintiff") is a state prisoner proceeding pro se and in forma

19 pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.   Following resolution of

20 Defendants' motion to dismiss, this action is proceeding against Defendants Bass and G. Miranda,

21 in their individual capacities, for the use of excessive force in violation of the Eighth Amendment.[1]

22 On January 4, 2012, Plaintiff filed a motion for summary judgment. (ECF No. 40.) Defendants filed

23 a cross-motion for summary judgment on January 19, 2012.  (ECF No. 43.)  Defendants filed an

24 opposition to Plaintiff's motion for summary judgment on January 25, 2012.  (ECF No. 46.)  On

25
26
27
28

CASE NO. 1:10-cv-00754-LJO-BAM PC

FINDINGS   AND   RECOMMENDATIONS
RECOMMENDING   DENYING   PLAINTIFF'S
MOTION FOR SUMMARY JUDGMENT, AND
RECOMMENDING GRANTING IN PART AND
DENYING IN PART DEFENDANTS' MOTION
FOR SUMMARY JUDGMENT

(ECF Nos. 40, 43, 46, 51-55)

OBJECTIONS DUE WITHIN THIRTY DAYS

**Findings and Recommendations on Motion for Summary Judgment**

_____

[1]On January 4, 2011, an order issued dismissing all other claims raised in Plaintiff's complaint.  (ECF No.
11.)  On January 9, 2012, an order issued adopting findings and recommendations and dismissing Plaintiff's official
capacity claims and claims for declaratory relief.  (ECF No. 41.)

1

1  February 3, 2012, Plaintiff filed an opposition to Defendants' cross-motion for summary judgment.[2]

2  (ECF No. 51.)  On February 7, 2012, Plaintiff filed two documents entitled replies to Defendants'

3  motion for summary judgment.  (ECF Nos. 52, 53.)  On February 10, 2012, Defendants filed a reply

4  to Plaintiff's opposition to the cross-motion for summary judgment.  (ECF No. 55.)

5  **II.    Summary Judgment Legal Standard**

6          Pursuant to Federal Rule of Civil Procedure 56(c), summary judgment is appropriate when

7  it is demonstrated that there exists no genuine issue as to any material fact, and that the moving party

8  is entitled to judgment as a matter of law.  Summary judgment must be entered, "after adequate time

9  for discovery and upon motion, against a party who fails to make a showing sufficient to establish

10  the existence of an element essential to that party's case, and on which that party will bear the burden

11  of proof at trial."  Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  However, the court is to

12  liberally construe the filings and motions of pro se litigants.  Thomas v. Ponder, 611 F.3d 1144, 1150

13  (9th Cir. 2010).  The "party seeking summary judgment bears the initial responsibility of informing

14  the district court of the basis for its motion, and identifying those portions of the 'pleadings,

15  depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'

16  which it believes demonstrate the absence of a genuine issue of material fact."  Celotex, 477 U.S.

17  at 323 (quoting Rule 56(c) of the Federal Rules of Civil Procedure).

18          If the moving party meets its initial responsibility, the burden then shifts to the opposing

19  party to establish that a genuine issue as to any material fact actually does exist.  Matsushita Elec.

20  Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986).  In attempting to establish the existence

21  of this factual dispute, the opposing party may not rely upon the denials of its pleadings, but is

22  required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery

23  material, in support of its contention that the dispute exists.  Fed. R. Civ. P. 56(e); Matsushita, 475

24  U.S. at 586 n.11.

25          The parties bear the burden of supporting their motions and oppositions with the papers they

26  wish the Court to consider and/or by specifically referencing any other portions of the record for

27  ────────────────────

28          [2]Plaintiff was provided with notice of the requirements for opposing a motion for summary judgment by the
Court in an order filed on February 7, 2011.  Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988); (ECF No. 14.).

1   consideration. <u>Carmen v. San Francisco Unified School Dist.</u>, 237 F.3d 1026, 1031 (9th Cir. 2001).

2   The Court will not undertake to mine the record for triable issues of fact. <u>Simmons v. Navajo</u>

3   <u>County, Arizona</u>, 609 F.3d 1011, 1017 (9th Cir. 2010).

4         "[W]hen parties submit cross-motions for summary judgment, [e]ach motion must be

5   considered on its own merits." <u>Fair Hous. Council of Riverside County, Inc. v. Riverside Two</u>, 249

6   F.3d 1132, 1136 (9th Cir. 2001) (internal quotations and citation omitted).

7   **III.**   **Plaintiff's Motion for Summary Judgment**

8        **A.**    **Plaintiff's Statement of Undisputed Facts**

9   1.    On March 21, 2010, Defendants Bass and Miranda approached Plaintiff's cell, and asked

10        Plaintiff if he wanted to attend a rule violation hearing. Plaintiff stated that he did want to

11        attend and Defendant Bass handcuffed Plaintiff using a waist chain. Plaintiff was then

12        escorted by Defendants Bass and Miranda to the rotunda staff office within Building 4BIL.

13   2.    During the rule violation hearing, the senior hearing officer began to get argumentative with

14        Plaintiff, and Plaintiff told him that just because he had five officers with him and a gun "he

15        is not just go to talk to me any kind of way, because that don't scare me."[3]

16   3.    After the hearing, Plaintiff was escorted from the staff office back to his cell. Once Plaintiff

17        was secured in his cell, Defendant Bass proceeded to uncuff Plaintiff's left wrist. Defendant

18        Bass then uncuffed Plaintiff's right wrist and relocked it by slamming down on the handcuffs

19        causing injury to Plaintiffs' right wrist.[4]

20   4.    Defendant Bass then pulled on Plaintiff's waist chain and stated, "Don't ever talk to my

21        lieutenant like that you <u>fucking n. word</u>," and then ordered Defendant Miranda to pepper

22        spray Plaintiff in the mid section. Defendant Miranda then pepper sprayed Defendant Bass,

23        and then turned and pepper sprayed Plaintiff in the mid section as Defendant Bass pulled

24

25

26         [3]Defendants object that this fact is irrelevant. Given the Court's duty to determine whether there exists a

27  genuine dispute as to any *material* fact, the Court shall only consider relevant evidence.

28         [4]Defendant Bass disputes that he slammed down on the handcuffs. Defendant Bass states that Plaintiff grabbed Defendant Bass and Defendant Bass pulled away. (Bass Dec. ¶ 8, ECF No. 43-3.)

1    Plaintiff to the cell door food port.[5]

2    5.    Defendant Bass had both hands on Plaintiff's waist chain as he pulled the chain away from

3          the cell door, giving Defendant Miranda room to move in and pepper spray Plaintiff.

4          Plaintiff's right arm and mid section were struck by the pepper spray because Plaintiff's mid

5          section covered the food port.[6]

6    6.    Defendant Bass and Miranda were hit by the pepper spray as it bounced off Plaintiff's mid

7          section and cell door, striking Defendants in the face and body.  Defendant Bass released the

8          hold he had on the waist chain and Defendant Miranda stopped pepper spraying Plaintiff due

9          to being hit by the backlash.[7]

10   7.    Defendant Miranda and Bass ran out of the section, they appeared to be laughing at Plaintiff.

11         Plaintiff then pulled his arm back into the cell and began to wash the pepper spray off his

12         hand and arm.  Plaintiff was then escorted to the rotunda and evaluated by licensed vocation

13         nurse ("LVN") Amobi who noted the injury to Plaintiff's right wrist.  After Plaintiff was

14         medically cleared, LVN Amobi issued Plaintiff a medical request due to his right wrist

15         beginning to swell.[8]

16   8.    Plaintiff was escorted to his cell.  Plaintiff filed an appeal attaching the declarations of

17         witnesses; inmates Ogilne, Powell, Evans, Boyden, Thomas, Lemons and Vallare.

18   9.    On March 30, 2010, Plaintiff received a false rules violation report.[9]

19   ///

20

21   ─────────────────

22        [5]Defendants dispute this fact. Defendants claim that Plaintiff refused to release his grip on Defendant Bass
     and Defendant Miranda acted to prevent Defendant Bass's arm from being pulled further into the cell which would
     have made him vulnerable to serious injury.  (Miranda Dec. ¶¶ 9, 10; ECF No. 43-3.)

23
24        [6]Defendants state that the waist chain became lodged on the food port and Plaintiff flung his mid section at
     the food port to prevent his cell from becoming contaminated with the pepper spray.  (Bass Dec. ¶¶ 8, 10.)

25        [7]Defendant Miranda disputes this stating he administered a single burst of pepper spray and Plaintiff
     released his grip on Defendant Bass.  (Miranda Dec. ¶¶ 10, 12.)

26
27        [8]Defendants Miranda and Bass were treated at an outside hospital due to exposure to pepper spray.  (Bass
     Dec. ¶ 14; Miranda Dec. ¶ 14.)

28        [9]Although Plaintiff includes additional "facts", the remainder of his facts are argument and will not be
     recited in this section.

B.    **Plaintiff's Position**

Plaintiff argues that there are no material facts to dispute that Defendants were deliberately indifferent to his safety and summary judgment should be granted.[10]   (Plaintiff's Motion for Summary Judgment 1, ECF No. 40.) Plaintiff claims that Defendants are deliberately indifferent by Defendant Bass yanking and slamming down on the waist chain, causing injury, and ordering Defendant Miranda to pepper spray Plaintiff.  (Id. at 2.)

Plaintiff states that Defendant Bass uncuffed his left hand.  As Defendant Bass proceeded to uncuff Plaintiff's right hand, he slammed down on the handcuffs causing injury to Plaintiff's right hand, and then pulled back on the waist chains causing Plaintiff to be violently pulled to the food port. (Id. at 2-3.) Plaintiff argues that Defendant Bass has made conflicting statements that Plaintiff grabbed his arm, while at other times stating that Plaintiff grabbed his hand, and has made differing statements as to the extent of his arm that was pulled into the cell.  (Id. at 5-6.)

Plaintiff claims that Defendant Bass was very upset that Plaintiff had disrespected his supervisor and attempted to get in the supervisor's good graces by assaulting Plaintiff.  After being order to pepper spray Plaintiff by Defendant Bass, Defendant Miranda pepper sprayed Plaintiff.  During the incident, Defendant Bass pulled back on the waist chain causing Plaintiff to sustain injury to his right wrist.  (Id. at 8.)

Plaintiff argues that Defendants misstate facts in the opposition to his motion for summary judgment, thereby proving they have committed perjury and his motion should be granted. (Reply 3, ECF No. 52.)

C.    **Defendants' Position**

Defendants argue that although Plaintiff brings this motion arguing the incorrect claims, this action is ripe for decision on the excessive force claim because the overwhelming evidence shows that Plaintiff caused the incident when he grabbed Defendant Bass and refused to let go.  Defendants

---

[10]Plaintiff attempts to expand his claims against the named defendants to include deliberate indifference and failure to intervene.  However, Plaintiff may not amend his complaint via his motion for summary judgment.  See Gilmore v. Gates, McDonald & Co., 382 F.3d 1312, 1315 (11th Cir. 2004).  Plaintiff's claims are confined to those screened and found cognizable by the Court.  (ECF Nos. 11, 12.)

only used reasonable force to get free and restrain Plaintiff. While Plaintiff argues that Defendants were upset because Plaintiff disrespected the lieutenant during the rule violation hearing, they were not present during the hearing and only transported Plaintiff to and from the hearing. Plaintiff was very upset after the hearing and taunted the officers by suggesting he would cause an incident to use as a pretext to sue them. That is what Plaintiff did by creating the situation in which force was necessary to subdue him. (Opp. 2, ECF No. 46.)

### D.   Excessive Force Legal Standard

When a prison official stands accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on whether the force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm. Hudson v. McMillian, 503 U.S. 1, 7 (1992) (citing Whitley v. Albers, 475 U.S. 312, 320-21 (1986)). In determining whether the use of force was wanton and unnecessary, it is proper to consider factors such as the need for application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of the forceful response. Hudson, 503 U.S. at 7.

A prison official's use of force to maliciously and sadistically cause harm violates the contemporary standards of decency. Wilkins v. Gaddy, 130 S. Ct. 1175, 1178 (2010). However, "[n]ot 'every malevolent touch by a prison guard gives rise to a federal cause of action." Gaddy, 130 S. Ct. at 1179 (quoting Hudson, 503 U.S. at 9). Factors that can be considered are "the need for the application of force, the relationship between the need and the amount of force that was used, [and] the extent of injury inflicted." Whitley, 475 U.S. at 321; Marquez v. Gutierrez, 322 F.3d 689, 692 (9th Cir. 2003). Although the extent of the injury is relevant, the inmate does not need to sustain serious injury. Hudson, 503 U.S. at 7; Wilkins, 130 S. Ct. at 1178-79. The Eighth Amendment's prohibition on cruel and unusual punishments necessarily excludes from constitutional recognition de minimus uses of physical force. Hudson, 503 U.S. at 9-10.

### E.   Discussion

Although Plaintiff brings his motion arguing deliberate indifference, his pleadings shall be

6

liberally construed, and the Court shall consider his motion as a motion for summary judgment on the excessive force claims.  The Court finds that Plaintiff has met his initial burden of informing the Court of the basis for his motion, and identifying those portions of the record which he believes demonstrate the absence of a genuine issue of material fact.  The burden therefore shifts to Defendants to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus., 475 U.S. at 586 (1986).

While Plaintiff claims that Defendant Bass told him not to ever talk to his lieutenant like that again, Defendant Bass states that he did not say anything to Plaintiff during the escort.  Defendants sworn declarations state that Plaintiff was upset following the rule violation hearing and stated, "I'm gonna make money off you motha fuckas."  (ECF No. 43-3 at ¶ 4.)  Plaintiff alleges that Defendant Bass slammed the handcuffs as he was unlocking them, causing injury to Plaintiff, and ordered Defendant Miranda to pepper spray him.  However, Defendants claim that Plaintiff grabbed Defendant Bass' arm and pulled it into the cell refusing to let go.  Defendant Miranda then administered a single burst of pepper spray to restore order.

Plaintiff argues that Defendant Bass has made conflicting statements regarding how Plaintiff grabbed his hand and the extent of his arm that was pulled into the cell that show Defendant Bass perjured himself.  Plaintiff asks the Court to find his verison of the events true.  Making credibility determinations, weighing the evidence, and drawing legitimate inferences are functions for the jury functions, not the judge.  Bravo v. Santa Maria, 665 F.3d 1076, 1083 (9th Cir. 2011).

In his reply, Plaintiff argues that Defendants made false statements in their points and authorities, such as stating they were not present during the rule violation hearing, when the evidence shows they were, and asks the Court to enter judgment against Defendants Bass and Miranda.  Plaintiff points out that in their argument, Defendants made factual misstatements that he claims demonstrate that Defendants have again offered perjured testimony.  To the extent that the points and authorities misstates the date of the incident or argues facts that Plaintiff disagrees with, this does not entitle Plaintiff to judgment as a matter of law.  The issue is whether there are triable issues of fact, and the Court finds that Defendants have met their burden of establishing that a triable issue of fact exists as to whether the force was used in a good faith effort to restore order and recommends

that Plaintiff's motion for summary judgment be denied.

**VI.**   **Defendants' Cross Motion for Summary Judgment**

    **A.**   **Defendants' Statement of Undisputed Facts**

1.    Plaintiff, a prisoner of the State of California, is serving a life sentence for First Degree Murder.

2.    At the time of the incident, Plaintiff was housed in the Segregated Housing Unit ("SHU") at Corcoran State Prison.  Pursuant to the California Rules and Regulations, Title 15 section 3341.5, the SHU is a maximum security housing unit reserved for inmates who endanger the safety of others or the security of the institution.

3.    On March 21, 2010, Defendants Bass and Miranda escorted Plaintiff to his cell following a disciplinary hearing for a rules violation.

4.    Plaintiff was visibly upset at the time of the escort, likely because he was found guilty of the rules violation for refusing a cell mate.  Plaintiff acknowledges he participated in a verbal altercation during the disciplinary hearing just moments before Defendants Bass and Miranda escorted him back to his cell.

5.    Neither Defendant Bass nor Defendant Miranda said anything to Plaintiff during the escort from the disciplinary hearing back to Plaintiff's cell.  However, Plaintiff was swearing belligerently and shouted, "I'm gonna make money off you motha fuckas."[11]

6.    Plaintiff was handcuffed with a chain around his waist securing his wrists to each side of him.  Once he was securely placed in his cell, Defendant Bass removed the padlock and opened the food port on the cell door in order to remove Plaintiff's restraints.

7.    Plaintiff stood next to the open food port and Defendant Bass reached through and removed the padlock that held Plaintiff's wrist restraints in place.  After the padlock was removed from the waist restraints, Plaintiff faced forward and placed both hands through the food port

---

[11] Plaintiff states that Defendants had two opportunities to address the statement allegedly made by Plaintiff and did not bring it to anyone's attention before the motion for summary judgment.

1    to have the cuffs removed from his wrists.[12]

2    8.    Defendant Bass removed the excess chain from Plaintiff's hands and placed the chain to the

3          left side of the food port.  Defendant Bass then removed the handcuff from Plaintiff's left

4          wrist.

5    9.    As Defendant Bass inserted the key into the handcuff securing Plaintiff's right wrist, Plaintiff

6          grabbed Defendant Bass' left wrist with his right hand and attempted to pull Defendant Bass'

7          arm into the food port opening.  Both Defendants Bass and Miranda ordered Plaintiff to

8          release his grip on Defendant Bass' arm, but Plaintiff ignored their orders.

9    10.   Though Plaintiff continued to pull Defendant Bass' arm, the excess waist chains that were

10         placed to the left of the cell door snagged on the door to the food port, and restricted

11         Plaintiff's ability to pull Defendant Bass' entire arm into his cell.

12   11.   Defendant Bass had access to both a retractable baton and to Oleoresin Capsicum ("O.C.")

13         spray, but was too taken aback to utilize either defense against Plaintiff.

14   12.   Because Plaintiff disregarded continuous verbal orders to release his grip on Defendant Bass,

15         Defendant Miranda unholstered his O.C. pepper spray and administered one burst through

16         the open food port.[13]

17   13.   O.C. spray was the most appropriate force option to be used in this situation, as Plaintiff

18         would not release his grip, and Defendant Miranda had to act fast to prevent Plaintiff from

19         pulling Defendant Bass' entire arm into his cell, which would have left Defendant Bass

20         vulnerable to serious injury.

21   14.   Defendant Miranda made the decision to utilize his O.C. spray because he was presented

22         with a fast-moving situation in which a fellow officer faced a risk of injury.  Defendant Bass

23         did not ask him to spray Plaintiff.

24   15.   When Defendant Miranda administered the O.C. spray, Plaintiff immediately released his

25

26         [12]Plaintiff states that Defendant Bass slammed back down on the handcuffs and told Plaintiff never to talk to his lieutenant in that manner and then told Defendant Miranda to pepper spray Plaintiff.

27

28         [13]Plaintiff states that Defendant Miranda sprayed Defendant Bass on the arm because he was in the way. Then Defendant Miranda went around Defendant Bass and emptied the entire canister of pepper spray onto Plaintiff's mid section.

grip on Defendant Bass and threw his torso against the food port to prevent the O.C. spray from contaminating his cell.

16. Plaintiff acknowledges that he was not at all injured by the O.C. spray, that he has been sprayed more than fifty times, and that "it really doesn't do anything to him."

17. Defendant Bass did not use any force against Plaintiff during the incident. After Plaintiff grabbed Defendant Bass' arm, Defendant Bass simply attempted to pull away from Plaintiff by pushing off his cell, in order to cause Plaintiff to release his grip on him. If Plaintiff was injured as a result of this, the injury was caused by his own bad behavior. Defendant Bass' intent was to secure his own safety and to restore order.

18. Defendant Miranda did not intend to use any force against Plaintiff that day, but was presented with a situation caused by Plaintiff, that required immediate action to prevent the infliction of serious injury to Defendant Bass.

19. Shortly thereafter, Defendants Bass and Miranda were evaluated and medically cleared at the John D. Klarich Memorial Hospital.

20. On March 21, 2010, Plaintiff was issued a Rules Violation Report (CDC Form 115), for battery on a peace officer. Plaintiff was found guilty of the offense on July 1, 2010.

21. Plaintiff alleges that Defendant Miranda was responsible for the incident, and used Defendant Bass as a "frontman."

**B.   Defendants' Position**

Defendants move for summary judgment on the grounds that their use of force was reasonable under the circumstances, and they are entitled to qualified immunity because they acted in good faith and reasonably believed their actions were lawful.

Defendant Bass argues that he did not use any force against Plaintiff during the incident in question. Defendant Bass states that the overwhelming evidence demonstrates that Plaintiff grabbed Defendant Bass' arm and tried to pull it into his cell. The only force Defendant Bass used was the force necessary to pull himself out of the grip of Plaintiff. The force used against Plaintiff was necessary to get Plaintiff to release his grip on Defendant Bass and was administered in a good faith effort to restore discipline. The extent of injury was not disproportionate to the threat that existed

1    and the threat to Defendant Bass was serious and required immediate intervention.  The force used

2    was reasonable and necessary.

3        Defendant Miranda argues that his use of force was appropriate and justified because

4    Plaintiff's actions could cause serious injury to Defendant Bass, and Plaintiff was refusing to comply

5    with the orders to release his hold on Defendant Bass.  The use of pepper spray was the best force

6    option for the situation where Defendant Miranda had to act quickly to prevent Plaintiff from pulling

7    Defendant Bass' arm into his cell which could have resulted in serious injury.  The extent of injury

8    was not disproportionate to the threat that was presented.  Defendant Miranda only used pepper spray

9    after Plaintiff refused to comply with orders to stop.

10       Finally, Defendants argue they are entitled to qualified immunity because they reasonably

11   believed their actions were lawful.  A reasonable correctional officer would not believe that applying

12   reasonable and necessary force on an inmate who had grabbed, and was refusing to release another

13   officer, was unconstitutional.  There is no evidence that Defendants Bass and Miranda acted with

14   malice and sadism.  The facts show that their actions were a good faith effort to stop Plaintiff and

15   restrain him after he grabbed Defendant Bass.

16   **C.**    **Plaintiff's Position**

17       Plaintiff claims that after escorting him back to his cell from a rule violation hearing,

18   Defendant Bass slammed his handcuffs, told Plaintiff not to ever talk to his lieutenant in that manner

19   and ordered Defendant Miranda to pepper spray Plaintiff.  Plaintiff argues that he did not grab

20   Defendant Bass or pull Defendant Bass' hand into his cell.  Plaintiff argues that there was no need

21   for Defendants Bass and Miranda to use force against him and the use of force was in bad faith to

22   cause harm to Plaintiff.

23       Finally, Plaintiff argues that Defendants Bass and Miranda are not entitled to qualified

24   immunity because they acted maliciously in attacking Plaintiff at his cell door and pepper spraying

25   him because he had spoken disrespectfully to the lieutenant during the rule violation hearing.

26   **D.**    **Discussion**

27       Where Plaintiff is proceeding pro se, "we must consider as evidence in his opposition to

28   summary judgment all of [plaintiff's] contentions offered in motions and pleadings, where such

contentions are based on personal knowledge and set forth facts that would be admissible in evidence, and where [plaintiff] attested under penalty of perjury that the contents of the motions or pleadings are true and correct." <u>Jones v. Blanas</u>, #93 F.3d 918, 923 (9th Cir. 2004). A review of the documents filed by Plaintiff reveals that only the complaint filed April 30, 2010, Plaintiff's motion for summary judgment, and declaration by plaintiff in response to fraudulent 115 were attested to under penalty of perjury. (Compl., ECF No. 1; Plaintiff's Motion for Summary Judgment. 1-10, 37, ECF No. 40.) Arguments or contentions set forth in a responding brief do not constitute evidence. <u>See</u> <u>Coverdell v. Dep't of Soc. & Health Servs.</u>, 834 F.2d 758, 762 (9th Cir. 1987) (recitation of unsworn facts not evidence). Therefore, in deciding Defendants' motion for summary judgment, only those documents attested to under penalty of perjury shall be construed as evidence.

Viewing the facts in the light most favorable to the non-moving party, Defendant Bass slammed Plaintiff's handcuffs down causing a cut and pain and swelling to Plaintiff's wrist while telling Plaintiff not to speak to his lieutenant in that manner again. Defendant Bass then ordered Defendant Miranda to pepper spray Plaintiff. Defendant Miranda attempted to pepper spray Plaintiff, but pepper sprayed Defendant Bass because he was in the way. So Defendant Miranda went around Defendant Bass and emptied his cannister of pepper spray onto Plaintiff.

### 1.   **Defendant Bass**

While Defendant Bass argues that he did not use any force against Plaintiff, Plaintiff alleges that Defendant Bass slammed the handcuffs causing a cut and swelling to his wrist. Defendant Bass also argues that, even if the facts as Plaintiff alleges are true, the use of force would be de minimus. The Cruel and Unusual Punishment Clause necessarily excludes de minimus use of force that is not the sort "repugnant to the conscience of mankind." <u>Hudson</u>, 503 U.S. at 9-10, 112 S. Ct. at 1000 (citations omitted). The extent of the injuries is one of the factors to be used in determining if the force used was de minimus. <u>Id.</u> However, the proper emphasis is on the amount of force used, not the severity of the injuries inflicted. <u>Oliver v. Keller</u>, 289 F.3d 623, 628 (9th Cir. 2002).

Plaintiff claims that Defendant Bass slammed the handcuffs because he was upset with the manner in which Plaintiff spoke to the lieutenant during the rule violation hearing. Accepting these facts as true, there is a triable issue as to whether there was a need for the application of force.

Although Defendant Bass argues that the use of force was de minimus, Plaintiff alleges that the force used caused cuts to his wrist and swelling. Plaintiff has submitted sufficient evidence to raise a triable issue as to whether Defendant Bass used force to restore order, or if the use of force was for the purpose of causing harm.

Plaintiff has met his burden of establishing that a triable issue of fact exists as to whether Defendant Bass' use of force in slamming Plaintiff's handcuffs was maliciously and sadistically for the purpose of causing harm, and recommends that Defendant Bass' motion for summary judgment be denied.

### 2. **Defendant Miranda**

While Plaintiff alleges that the pepper spray was used maliciously to cause harm, Plaintiff has not submitted any admissible evidence to dispute that he grabbed Defendant Bass' arm and attempted to pull it into his cell. The declaration of the only inmate witness to have seen the incident states that Defendant Bass was pulling backwards on the waist chain, which is consistent with Defendant Bass' testimony that Plaintiff had his arm and he was attempting to pull away from Plaintiff. (ECF No. 40 at 24, Vallare Dec.) In this instance, the evidence before the Court shows that Plaintiff grabbed Defendant Bass and was attempting to pull his arm through the food port into the cell. Defendant Miranda ordered Plaintiff to release Defendant Bass, and Plaintiff failed to comply. Defendant Miranda believed that Defendant Bass was at a risk of harm from Plaintiff, and Plaintiff's failure to comply created a need for the use of force to restore order.

The Ninth Circuit has ruled that the use of small amounts of pepper spray may be a necessary prison technique where a prisoner refuses to comply and, after adequate warning, it becomes apparent that the use of slight force will be required. Spain v. Procunier, 600 F.2d 189, 195 (9th Cir. 1979). Defendant Miranda administered his pepper spray after Plaintiff failed to comply with the orders to release Defendant Bass' arm. Whether the first attempt to pepper spray Plaintiff was blocked by Defendant Bass and a second burst was required, the use of pepper spray to stop an inmate from pulling a correctional officer's arm through the food port would be a reasonable application of force in response to the threat confronting the officer. See Clement v. Gomez, 298 F.3d 898, 903-04 (9th Cir. 2002) (second application of pepper spray dispensed because initial spray

1  was blocked by bodies of inmates did not violate Eighth Amendment); Jennings v. Hays, No. 3:10-

2  cv-08004 PCT-JAT (JRI), 2011 WL 1480038, *7 (D.Ariz. Apr. 9, 2011) (application of pepper spray

3  to prisoner who was refusing to comply with orders does not amount to excessive force).

4          Since Plaintiff has failed to establish facts from which any trier of fact could find that

5  Defendant Miranda used excessive force, there is no genuine issue as to any material fact.

6  Henderson v. City of Simi Valley, 305 F.3d 1052, 1061 (9th Cir. 2002).  Accordingly, the Court

7  finds that Defendant Miranda is entitled to summary judgment on Plaintiff's claim of excessive force

8  and recommends that Defendant Miranda's motion for summary judgment be granted.

9                    **3.    Qualified Immunity**

10         Defendants argue that they are entitled to qualified immunity because their actions were

11 reasonable under the circumstances.  The doctrine of qualified immunity protects government

12 officials from civil liability where "their conduct does not violate clearly established statutory or

13 constitutional rights of which a reasonable person would have known."  Pearson v. Callahan, 555

14 U.S. 223, 231, 129 S. Ct. 808, 815 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818, 102 S.

15 Ct. 2727, 2738 (1982)).  Qualified immunity protects "all but the plainly incompetent or those who

16 knowingly violate the law."  Ashcroft v. al-Kidd, __ U.S. __, 131 S. Ct. 2074, 2085 (2011) (citations

17 omitted).  To determine if an official is entitled to qualified immunity the court uses a two part

18 inquiry.  Saucier v. Katz, 533 U.S. 194, 200, 121 S. Ct. 2151, 2155 (2001) overruled in part by "

19 Pearson, 555 U.S. 223, 129 S. Ct. 808.  The court determines if the facts as alleged state a violation

20 of a constitutional right and if the right is clearly established so that a reasonable official would have

21 known that his conduct was unlawful.  Ashcroft, 131 S. Ct. at 2083.  This does not require that the

22 same factual situation must have been decided, but that existing precedent would establish the

23 statutory or constitutional question beyond debate.  Id.; Mattos v. Agarano, __ F.3d __, 2011 WL

24 4908374, *6 (9th Cir. 2011).  "The linchpin of qualified immunity is the reasonableness of the

25 official's conduct."  Rosenbaum v. Washoe County, 654 F.3d 1001, 1006 (9th Cir. 2011).

26         The inquiry as to whether the right was clearly established is "solely a question of law for the

27 judge."  Dunn v. Castro, 621 F.3d 1196, 1199 (9th Cir. 2010) (quoting Tortu v. Las Vegas Metro.

28 Police Dep't., 556 F.3d 1075, 1085 (9th Cir. 2009)).  The court is "permitted to exercise their sound

1 discretion in deciding which of the two prongs of the qualified immunity analysis should be

2 addressed first in light of the circumstances in the particular case at hand." Pearson, 555 U.S. at 236,

3 129 S. Ct. at 818. Finally, the right the official is alleged to have violated must be defined at the

4 appropriate level of specificity before the court can determine if it was clearly established. Dunn,

5 621 F.3d at 1200.

6 **a.   Defendant Bass**

7 While Defendant Bass argues that he is entitled to qualified immunity, it is clearly established

8 that correctional officers violate the Eighth Amendment when they use force maliciously and

9 sadistically for the purpose of causing harm. Martinez v. Stanford, 323 F.3d 1178, 1183 (9th Cir.

10 2003). There is a factual dispute as to whether Defendant Bass slammed Plaintiff's handcuffs for

11 the purpose of causing harm. Where there are factual disputes as to the parties' conduct or motives,

12 the case cannot be resolved at summary judgment on qualified immunity grounds. See Liston v.

13 County of Riverside, 120 F.3d 965, 967 (9th Cir. 1997); Collins v. Jordan, 110 F.3d 1363, 1369 (9th

14 Cir. 1997); Alexander v. City of San Francisco, 29 F.3d 1355, 1364 (9th Cir. 1994). Defendant

15 Bass' motion for summary adjudication on the grounds of qualified immunity should be denied.

16 **b.   Defendant Miranda**

17 In this instance, even if Defendant Miranda had used excessive force by pepper spraying

18 Plaintiff, he would also be entitled to qualified immunity. It is not clearly established that a

19 recalcitrant prisoner has a right to be free from pepper spray. See Giles v. Soto, No. 1:07-cv-00197-

20 CKJ, 2011 WL 4433109, *3 (E.D.Cal. Sept. 21, 2011) (correctional officers entitled to qualified

21 immunity for pepper spraying inmate who refused to comply with order); Howard v. Nunley, No.

22 1:06-cv-00191-NVW, 2010 WL 3785536, *5-6 (E.D.Cal. Sept. 24, 2010) (not clearly established

23 that using pepper spray on disobedient prisoner would violate constitutional right). Since Plaintiff

24 refused Defendant Miranda's order to release Defendant Bass, a reasonable officer would not believe

25 that pepper spraying Plaintiff to gain compliance would violate a clearly established right. The Court

26 recommends that Defendant Miranda's motion for summary judgment on the grounds of qualified

27 immunity be granted.

28 ///

**VII.    Conclusion and Recommendation**

The Court finds Plaintiff has failed to meet his burden to show that no triable issues exist and his motion for summary judgment should be denied.  There is a factual dispute regarding whether Defendant Bass used force maliciously and sadistically for the purpose of causing harm, and therefore, Defendant Bass is not entitled to summary judgment.  However, Defendant Miranda is entitled to summary judgment on the grounds that the force used was not excessive in the circumstances presented to the court and, alternately, Defendant Miranda is entitled to qualified immunity.

For the reasons set forth herein, the Court HEREBY RECOMMENDS that:

1.    Plaintiff's motion for summary judgment be DENIED;

2.    Defendants' motion for summary judgment be GRANTED IN PART AND DENIED IN PART as follows:

a.    Defendant Bass' motion for summary judgment be DENIED; and

b.    Defendant Miranda's motion for summary judgment be GRANTED.

These findings and recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l).  Within thirty (30) days after being served with these findings and recommendations, the parties may file written objections with the Court.  The document should be captioned "Objections to Magistrate Judge's Findings and Recommendations."  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

IT IS SO ORDERED.

**Dated:   May 16, 2012           /s/ Barbara A. McAuliffe**
                                    UNITED STATES MAGISTRATE JUDGE